**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**T.A.S**
      Plaintiff,

v.                                  Civil Action No: 8:14-cv-03019-SDM-AEP

**Pasco County School District**
      Defendant.
_____/

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S**
**PRELIMINARY INJUNCTION**
### INTRODUCTION

Plaintiff brings this action pursuant to the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 seeking declaratory and injunctive relief and damages.  Plaintiff alleges Defendant has failed to provide reasonable accommodations to T.A.S. so he may have full and equal enjoyment of the benefits of, and the opportunity to participate in, Defendant's program.

### FACTUAL BACKGROUND

T.A.S. is ten-years-old and is a child diagnosed with Aspergers Syndrome, Sensory Processing Disorder, ADHA, Rectal Prolapse, and Reactive Attachment Disorder. T.A.S. has difficulty appropriately interacting with his peers and interpreting social cues. In addition, T.A.S. requires constant adult supervision due to his tendency to wander, climb, explore new areas, and the use of self-injurious behaviors when becoming frustrated. T.A.S.'s difficulties are a direct manifestation of his disability. T.A.S.'s autism significantly affects his daily life activities such as learning, social interaction with peers and adults, and other major life activities. As a child

with autism, T.A.S. has been identified by the Defendant as a handicapped child and placed into a special education program for children with autism, where he is provided specially designed instruction and related services to meet his unique needs pursuant to the Individuals With Disabilities Education Act, IDEA, 20 U.S.C. 1401 et seq.  T.A.S. attends New River Elementary School, located in Pasco County, FL.  New River Elementary School is a public school operated by the Defendant.

Kelly Smith and her husband are employed full time. When school is in session, T.A.S. requires before-school care.  However, when school is closed during a break or holiday, T.A.S. requires full time supervision.  Defendant, Pasco County School District (PCSD) operates a before and after school program through the Pasco Learning & Activity Centers of Enrichment (PLACE). PLACE is  designed to provide an active and enriching environment for children who must arrive at school early, stay late and/or require supervised activities on most school holidays. Participation is limited to elementary school children, in kindergarten through grade five. PCSD charges a fee for participants in the PLACE program, which is made payable to PCSD. Beginning in 2012, Kelly Smith obtained before school care services for T.A.S. through the PLACE program. The PLACE program that T.A.S. attended was located at his home school New River Elementary.

During T.A.S.' matriculation at PLACE, he received several PLACE program behavior notices due to incidents involving inappropriate behavior such as eloping, aggression, and refusing to comply; these behaviors are manifestations of T.A.S.' disabilities.  PLACE staff members, PCSD staff, Kelly Smith, and T.A.S.' behavior support services providers met to discuss and formulate a behavior support plan for T.A.S.' time at PLACE.  PCSD created an

amended PLACE behavior support plan for T.A.S. on 8/30/13 which included the following strategies designed to assist T.A.S. to have a successful experience at PLACE:

    a. T.A.S. daily routine/expectations for morning PLACE time to be discussed/reviewed with T.A.S. each day for his first week and at east weekly thereafter.
    b. When T.A.S. follows his PLACE routine and expectations, it is indicated on his reward chart
    c. PLACE will contact New River Elementary Behavior Specialist Jon Leidy with progress updates weekly or more often as needed.
    d. Please remember that changes in routine can be very challenging. Provide extra encouragement on days when this is the case.
    e. If T.A.S. is having difficulty transitioning from his parents before he checks into PLACE, encourage him to start again and make good choices after the transition occurs.

Officials from PLACE notified Kelly Smith by letter dated April 23, 2014, that T.A.S. would be expelled from the PLACE program as of April 30, 2014, due to behavior that is inextricably connected to T.A.S.' disability.  PLACE informed Kelly Smith that the expulsion would last one full calendar year, which would make T.A.S. eligible for re-admission May 1, 2015.

On June 23, 2014, T.A.S. was evaluated at the Adoption Related Services of Pinellas.  As a result of the evaluation, T.A.S. was diagnosed with Reactive Attachment Disorder.  Carmen Pupo LMHC, indicated T.A.S. lacks appropriate boundaries, is superficially engaging and charming and lacks good eye contact with his parents, has stolen and tells lies, lacks cause and effect thinking, does not seem to have appropriate conscious development, and  has poor peer relationships.  Ms. Pupo indicated that T.A.S.' behaviors are indicative of Reactive Attachment Disorder.  As a result of the new diagnosis, T.A.S. began to receive new treatment and medication.

Based on the new diagnosis, treatment, and T.A.S.' progress, Mrs. Kelly sought readmission to PLACE with new accommodations based on T.A.S.' new medical diagnosis. Officials from PLACE notified Mrs. Smith by letter dated September 25, 2014, that T.A.S. would not be able to re-apply to PLACE until May 1, 2015. On October 3, 2014, an in-school staff meeting was held at New River Elementary School to re-evaluate T.A.S.' IEP.  PCSD staff indicated T.A.S. "has made behavioral gains this school year, he can advocate for himself appropriately when he needs a break." T.A.S.' removal from PLACE was based on his disability and defendant's refusal to provide him with reasonable accommodations.

## STANDARDS FOR INJUNCTIVE RELIEF

This Court has the authority to grant the injunctive relief that the Plaintiff requests.  Fed. R. Civ. P. 65(a).  In order to obtain a preliminary injunction, a party must establish: (1) a substantial likelihood that the party applying for preliminary relief will succeed later on the merits; (2) whether the applicant will suffer irreparable injury absent preliminary relief; (3) whether the harm that the applicant will likely suffer outweighs harm that the opposing party will suffer as a result of the preliminary relief; and (4) whether the preliminary relief would disserve the public interest. *See Scott v. Roberts,* 612 F.3d 1279, 1290 (11th Cir. 2010).  The party seeking the preliminary relief bears the burden of establishing its entitlement to relief.  *Citizens for Police Accountability Political Comm. v. Browning*, 572 F.3d 1213, 1217 (11th Cir. 2009).

The history of this case provides ample evidence that Plaintiff has satisfied the four conditions necessary for a preliminary injunction.

I.   PLAINTIFF IS LIKELY TO PREVAIL ON THE MERITS AS INDISPUTABLE FACTS SHOW THAT THE PLAINTIFF IS ENTITLED TO RELIEF UNDER THE ADA

*Discrimination under the ADA*

The ADA, and the Rehabilitation Act, prohibits discrimination against persons with disabilities in specified programs or activities. The standards for determining liability under the two statutes are the same. *Sutton v. Lader*, 185 F.3d 1203, 1207  (11th Cir. 1999) ("The standard for determining liability under the Rehabilitation Act is the same as that under the ADA"). To prove discrimination under Title II of the Americans with Disabilities Act ("ADA"), a litigant must prove that they are a qualified individual with a disability who was prohibited from participating in a public entity's services, programs or activities by reason of his disability. 42 U.S.C. § 12132. T.A.S. meets all conditions to establish discrimination by the Defendant against him due to his disability.  T.A.S. has a disability, in that he has been diagnosed with Aspergers Syndrome, Sensory Processing Disorder, ADHA, rectal prolapse, and Reactive Attachment Disorder.  PCSD has recognized T.A.S. as a child with autism, and placed T.A.S. into a special education program for children with autism, where he is provided specially designed instruction and related services to meet his unique needs pursuant to the Individuals with Disabilities Education Act, IDEA, 20 U.S.C. 1401 et seq.  T.A.S. is being prohibited from participating in the PLACE program, which is a before and after school enrichment program operated by PCSD. PCSD is a public entity as that term is defined in 42 U.S.C. 12131(1). Further, Defendant has denied Plaintiff readmission into the PLACE program due to his disability, and the Defendant's refusal to provide accommodations.

Given that the Plaintiff has evidence that he is a person with a disability with a need for a reasonable accommodation that has been denied by the Defendant, he qualifies for the protections under the Americans with Disabilities Act ("ADA").

## II. PLAINTIFF WILL SUFFER IRREPARABLE HARM ABSENT PRELIMINARY RELIEF

The harm suffered by T.A.S. as a result of being dismissed and totally excluded

from defendants' before and after school program where he had attended for two years is immediate, irreparable and ongoing. Relevant to the issue presented here is the fact that several courts have found that the exclusion of students with disabilities from school sports activities were likely to result in irreparable harm, because of the negative effect of such exclusion on socialization. *Johnson v. Florida High School Activities Assn., Inc*., 899 F. Supp. 579, 586, (M.D. Fla. 1995). In this case, plaintiffs have clearly shown the harm to T.A.S., socially and educationally, resulting from Defendant denying him the opportunity to participate in and enjoy the benefits of the program provided by the Defendant. According to the program goals of PLACE, The staff will strive to meet the social, emotional, and intellectual needs of the child in an environment that fosters: Positive self-esteem, Initiative, Independence, Problem-solving, Creativity, Safety awareness, Sense of security, Self-control, Community involvement, and Environmental awareness. As a child with autism it is particularly important for T.A.S.' development that he have consistent and constant interaction with non-disabled children, along with the necessary supervision, and training of the staff working with him to aid in appropriate socialization activities. Denying T.A.S. the opportunity to participate in PLACE will delay any opportunity to learn appropriate social skills in integrated settings.

III.    THE HARM THAT PLAINTIFF WILL LIKELY SUFFER OUTWEIGHS HARM THAT
        THE DEFENDANTS WILL SUFFER AS A RESULT OF PRELIMINARY RELIEF

    The hardship to Defendant of continuing to provide services to the  T.A.S. in this action is negligible, and is unquestionably outweighed by the benefit of allowing Plaintiffs the opportunity to learn appropriate socialization skills outside the school setting and  integrate with non-disabled children.    *Long*, 2008 WL 4571903 at *3 (N.D. Fla. Oct. 14, 2008) ("If, as it ultimately turns out, treating individuals like [the plaintiff] in the community would require a

fundamental alteration of the Medicaid program, so that the Secretary prevails in this litigation, little harm will have been done. To the contrary, [plaintiff's] life will have been better, at least for a time."). The only hardships the defendants can claim are the costs, if any, of training current and future staff employees to recognize and understand the characteristics of autism and the relatively minor inconvenience of implementing plans to support students with disabilities.  The lack of hardship to the Defendant stands in stark contrast to the significant hardship the plaintiffs face if no injunction is granted. Based on the foregoing, the Plaintiffs have shown sufficiently serious questions going to the merits to make them a fair ground for litigation and have demonstrated clearly that the balance of hardships unquestionably favors the Plaintiffs.

## IV.    PRELIMINARY RELIEF WOULD NOT DISSERVE THE PUBLIC INTEREST

The public interest in this case is strongly in the favor of the Plaintiff.  A primary goal of the ADA is the equal participation of individuals with disabilities in the "mainstream" of American society.  The actions of the Defendants only frustrate the goals of the ADA, and the Rehabilitation Act, the Civil Rights Act of 1968, and the general thrust of the last 50 years of disability law.

## V.    NO BOND SHOULD BE REQUIRED

The decision to impose a bond pursuant to rule 65(c) of the Federal Rules of Civil Procedure is a matter of discretion for the Court. See *BellSouth Telecommunications*, 425 F.3d at 971; *Caterpillar, Inc. v. Nationwide Equipment*, 877 F.Supp. 611, 617 (M.D. Fla. 1994); *Baldree v. Cargill, Inc.,* 758 F.Supp. 704 (MD. Fla. 1990), aff'd, 925 F.2d 1474 (11th Cir. 1991). In fact, the Eleventh Circuit has concluded that the trial court may elect to require no security at all. *BellSouth Telecommunications*, 425 F.3d at 971. Courts have used this discretion to waive the

bond requirement for indigent plaintiffs. See e.g. *Bass v. Richardson*, 338 F.Supp. 478, 490 (E.D.N.Y. 1971)(concluding that persons who are indigent ordinarily should not be required to post a bond under Rule 65 (c)); *Denny v. Health & Social Servo Bd. of State of Wisconsin*, 285 F.Supp. 526, 527 (E.D. Wis. 1968)("Poor persons...are by hypothesis unable to furnish security as contemplated in rule 65(c), and the court should order no security in connection with this preliminary injunction.") See also *Maine Ass'n of Interdependent Neighborhoods*, 647 F.Supp. at 1319(court granted waiver of bond, noting impecunious status of plaintiffs, and based on plaintiff's strong case on the merits). T.A.S is indigent and not able to post a bond. Consequently, the Plaintiff requests this court to exercise its discretion and relieve him of the bond requirement.

Respectfully submitted this 3rd day of December, 2014.

By      /S/ Harold Bennett, Esq.
        Harold V. Bennett III, Esquire
        Counsel for Plaintiffs
        Florida Bar No. 0620297
        Disability Rights Florida
        1000 North Ashley Drive, Suite 640
        Tampa, Florida 33602
        Phone:  (850)488-9071
        Fax:      (850)488-8640
        E-Mail: haroldb@DisabilityRightsFlorida.org

        /S/ Stephanie Moore, Esq.
        Stephanie Moore, Esquire
        Counsel for Plaintiffs
        Florida Bar No. 0104375
        Disability Rights Florida
        1930 Harrison St. Suite 104
        Hollywood, FL 33020
        Phone:  (850)488-9071
        Fax:      (850)488-8640
        E-Mail:  stephaniem@disabilityrightsflorida.org

## CERTIFICATE OF SERVICE

I CERTIFY that a true and correct copy of the foregoing was furnished by Dennis Alfonso, McClain, Alfonso & Meeker, P.A., PO Box 4. Dade City, FL 33526-0004, eserve@McClainAlfonso.com by US Postal Mail and by electronic mail this 3rd day of December, 2014.

<div style="margin-left:40%">

s/ Harold Bennett, Esq.

Florida Bar No.

Disability Rights Florida

1000 North Ashley Drive, Suite 640

Tampa, Florida 33602

Phone:  (850)488-9071

Fax:  (850)488-8640

E-Mail: haroldb@DisabilityRightsFlorida.org

</div>